UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DANIEL E. BLUM, JR.,          :
                              :CIVIL ACTION NO. 3:16-CV-2281
          Plaintiff,          :
                              :(JUDGE CONABOY)
          v.                  :
                              :
NANCY A. BERRYHILL,           :
Acting Commissioner of        :
Social Security,              :
                              :
          Defendant.          :
                              :

_____

## MEMORANDUM

Pending before the Court is Plaintiff's appeal from the Commissioner's denial of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. (Doc. 1.) Plaintiff filed an application for benefits on July 22, 2013, alleging a disability onset date of July 30, 2012, which he later amended to April 19, 2014. (R. 21.) After Plaintiff appealed the initial denial of the claims, a hearing was held on January 12, 2015, and Administrative Law Judge ("ALJ") Richard Zack issued his Decision on March 17, 2015, concluding that Plaintiff had not been under a disability during the relevant time period. (R. 29.) Plaintiff requested review of the ALJ's decision which the Appeals Council denied on October 13, 2016. (R. 1-7.) In doing so, the ALJ's decision became the decision of the Acting Commissioner. (R. 1.)

Plaintiff filed this action on November 10, 2016. (Doc. 1.) He asserts in his supporting brief that the Acting Commissioner's determination should be remanded for the following reasons: 1) the

ALJ erred in finding Plaintiff capable of performing his past relevant work; and 2) the ALJ erred in relying on the an outdated State Agency medical opinion. (Doc. 9 at 2.) In his reply brief, Plaintiff also asserts that the case should be remanded for consideration of the evidence associated with the Agency's subsequent award of benefits on April 2, 2017, pursuant to a new DIB application. (Doc. 11 at 4.) After careful review of the record and the parties' filings, the Court concludes this appeal is properly granted.

## I. Background

Plaintiff was born on April 10, 1964, and was fifty years old on the amended disability onset date of April 10, 2014. (R. 21.) He has a GED and past relevant work as a delivery driver, pizza deliverer, and manager. (R. 28, 49.)

### A. Medical Evidence

Plaintiff does not present background medical evidence and notes that he presents evidence he considers relevant to the issues raised on appeal in the Argument section of his brief. (Doc. 9 at 1.) Defendant takes a similar approach to the presentation of evidence. (Doc. 10 at 4.) The Court will follow suit and, as needed, cite evidence relied upon by the parties in the context of their arguments.

### B. Opinion Evidence

#### 1. State Agency Consulting Physician

Louis B. Bonita, M.D., found that Plaintiff had the severe

impairments of Disorders of Back-Discogenic and Degenerative, Spine Disorders, Disorders of Muscle, Ligament and Fascia, and Obesity. (R. 92.) He completed a Residual Functional Capacity assessment on August 27, 2013. (R. 93-95.) He opined that Plaintiff had the following exertional limitations: he could lift twenty pounds occasionally and ten pounds frequently; he could stand and/or walk for about six hours in an eight-hour workday and sit for the same period of time; and he was not limited in his ability to push and/or pull except as shown for lift and/or carry. (R. 93.) Dr. Bonita assessed the following postural limitations: Plaintiff could climb ramps/stairs occasionally; he could never climb ladders/ropes/scaffolds; and he could stoop, kneel, crouch, and crawl occasionally. (R. 93-94.)

## 2. **Primary Care Physician**

Deborah Smith, M.D., completed a Physical Residual Functional Capacity Assessment on November 21, 2014. (R. 307-10.) Based on diagnoses of Spinal Stenosis, Meralgia Paresthetica, and Hyperlipidemia, Dr. Smith found the following: Plaintiff could sit and stand/walk for about two hours in an eight-hour workday; he needed to be able to shift positions at will; he would need to take unscheduled breaks during a work day; he could occasionally lift and carry less than ten pounds, rarely ten pounds, and never more than that; he could rarely crouch, stoop (bend), and twist; he could occasionally climb stairs; he could never kneel; he did not have any significant limitations with reaching, handling, or

fingering; he would be off task twenty percent of the workday; he would likely miss more than four days of work per month as a result of his impairments; his symptoms were reasonably consistent with the diagnoses; he could never tolerate temperature extremes and hazards; he could rarely tolerate dust, humidity, and fumes/odors/chemicals; and she expected his impairments and their effects to last for a continuous period of at least twelve months. (R. 307-09.)  Dr. Smith explained that Plaintiff had symptoms for years, he was on multiple medications for pain with some relief but he still had chronic pain, and his prognosis was poor.  (R. 310.)

## C. ALJ Hearing

At the January 12, 2015, hearing held by ALJ Zack, Plaintiff and his attorney appeared, as did Vocational Expert "VE" Carmine Abraham.  (R. 33.)  Plaintiff testified that he had trouble working because of pain and what he was able to do: he had pain and numbness down the right side of his arms and hands and at times he had trouble gripping things; he had pain shooting down his back and down the right side of his leg; the bottom of his left foot was totally numb; and the right side of his leg was numb.  (R. 39-40.) Plaintiff said that surgery had not been recommended for his back and his arthroscopic knee surgery did not help.  (R. 40.)  At the time of the hearing Plaintiff was taking Neurontin for nerve pain, oxycodone and percocet for pain, and cholesterol medication.  (*Id.*)

Plaintiff testified that, although he used to lift fifty pounds, he generally could not lift and carry more than five pounds

4

and he had trouble lifting a five pound container of oil and trouble with stairs when he was making pizza deliveries. (R 42.) Plaintiff said he could walk fifteen or twenty feet without stopping, he did not walk normally because of his back and leg pain, he could only be on his feet for five to ten minutes before he had to sit down, and he changed positions frequently to try to get comfortable. (R. 42-43.)

When asked by ALJ Zack what he did in his managerial job, Plaintiff responded that he did

> everything from go through produce, unloading
> the trucks, making the pizzas, deliveries.
> You're lifting anywhere from 50 pounds, which
> I can't do anymore, to lifting 5 pounds,
> walking up steps, which is very hard for me
> to do. Even getting out of the car because
> sometimes you get the car in front of the
> house and there's no steps. Other times,
> you're half a block away, and your're walking
> up the steps or you're walking up the hill if
> they don't have steps.

(R. 45.) Plaintiff added that, although he was a manager, he did deliveries, made pizzas, answered phones, and unloaded trucks. (R. 45-46.) He also said he was on his feet the whole time except when he was driving which would mean sitting down for five to ten minutes approximately every two hours but on days where he did not need to help with deliveries he was on his feet continuously. (R. 46.)

ALJ Zack asked the VE to consider an individual with Plaintiff's profile in terms of age, education, work experience, and medical history who

5

>         still would be able to lift up to 20 pounds
>         occasionally and 10 pounds frequently.  With
>         normal breaks and lunch periods throughout
>         the work day, he could either sit, stand, or
>         walk for about six out of eight hours in each
>         of those categories. . . . The claimant does
>         not maintain an ability to use his hands for
>         reaching in front of himself and laterally
>         side to side.  He can handle, finger, and
>         feel objects. . . . [He] doesn't have any
>         significant or serious non-exertional
>         impairments present.

(R. 49-50.)  In response to the ALJ's question whether such an

individual could perform any of Plaintiff's past work, the VE

responded that he would be able to do the manager position.  (R.

50.)

ALJ Zack then crafted a second hypothetical question asking

the VE to consider an individual who had the difficulties Plaintiff

described about his back problems with pain and numbness radiating

into his right leg, his knee problems, a renewal of hand problems,

the same limitations of lifting and carrying that Plaintiff

outlined, and the same difficulty in maintaining posture and

position for long periods of time and the need to constantly change

positions.  (R. 50-51.)  The VE responded that no jobs would be

available for such an individual.  (R. 51.)  The VE also testified

that his testimony was consistent with the Dictionary of

Occupational Titles ("DOT") and companion publications.  (*Id.*)

Regarding the VE's testimony in response to the first hypothetical

that the individual could perform the manager job, Plaintiff's

attorney then asked whether that would be as actually or generally

performed.  (R. 52.)  The VE responded that it would be as both.

(*Id.*)

## D. *ALJ Decision*

In his March 17, 2015, Decision, ALJ Zack made the following Findings of Fact and Conclusions of Law:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.
>
> 2. The claimant has not engaged in substantial gainful activity since July 30, 2012, the alleged onset date (20 CFR 404.1571 et seq.).
>
> 3. The claimant has the following severe impairments: degenerative joint disease of the right knee, status post right knee arthroscopy, partial synovectomoy, partial medial meniscectomy, chondroplasty of the patellofemoral articulation of the right knee, degenerative disc disease of the lumbar spine and obesity (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). The claimant can lift and carry 20 pounds occasionally and 10 pounds frequently. He can sit, stand and/or walk up to 6 hours each in an 8-hour workday with regular breaks and lunch periods. The claimant can do reaching in front and laterally, handling, fingering and feeling.
>
> 6. The claimant is capable of performing past relevant work as a manager (DOT#

7

185.137-010).  This work does not
require the performance of work-related
activities precluded by the claimant's
residual functional capacity (20 CFR
404.1565).

7.  The claimant has not been under a
disability, as defined in the Social
Security Act, from July 30, 2012,
through the date of this decision (20
CFR 404.1520(f)).

(R. 21-29.)  Other relevant portions of the ALJ's Decision will be

referenced in the Discussion section of this Memorandum.

## II. Disability Determination Process

The Commissioner is required to use a five-step analysis to

determine whether a claimant is disabled.[1]  It is necessary for the

Commissioner to ascertain: 1) whether the applicant is engaged in a

substantial activity; 2) whether the applicant is severely

impaired; 3) whether the impairment matches or is equal to the

---

[1]  "Disability" is defined as the "inability to engage in any
substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be expected to
result in death or which has lasted or can be expected to last for
a continuous period of not less than 12 months . . . ."  42 U.S.C.
§ 423(d)(1)(A).  The Act further provides that an individual is
disabled

only if his physical or mental impairment or
impairments are of such severity that he is not
only unable to do his previous work but cannot,
considering his age, education, and work
experience, engage in any other kind of
substantial gainful work which exists in the
national economy, regardless of whether such
work exists in the immediate area in which he
lives, or whether a specific job vacancy exists
for him, or whether he would be hired if he
applied for work.

42 U.S.C. § 423(d)(2)(A).

8

requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work. 20 C.F.R. §§ 404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

If the impairments do not meet or equal a listed impairment, the ALJ makes a finding about the claimant's residual functional capacity based on all the relevant medical evidence and other evidence in the case record. 20 C.F.R. § 404.1520(e); 416.920(e). The residual functional capacity assessment is then used at the fourth and fifth steps of the evaluation process. *Id.*

The disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

As set out above, the instant decision was decided at step four of the sequential evaluation process when the ALJ found that Plaintiff could perform his past relevant work as a manager. (R. 28.)

### III. Standard of Review

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). The Third Circuit Court of Appeals further explained this standard in *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence-- particularly certain types of evidence (e.g., that offered by treating physicians)--or if it really constitutes not evidence but mere conclusion. *See* [*Cotter*, 642 F.2d] at 706 ("'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record.") (footnote omitted). The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

*Kent*, 710 F.2d at 114.

This guidance makes clear it is necessary for the ALJ to analyze all probative evidence and set out the reasons for his decision. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000) (citations omitted).  If he has not done so and has not sufficiently explained the weight given to all probative exhibits, "to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979).  In *Cotter*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706-07.  However, the ALJ need not undertake an exhaustive discussion of all the evidence.  *See*, *e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

A reviewing court may not set aside the Commissioner's final decision if it is supported by substantial evidence, even if the court would have reached different factual conclusions. *Hartranft*, 181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings

of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .").  "However, even if the Secretary's factual findings are supported by substantial evidence, [a court] may review whether the Secretary, in making his findings, applied the correct legal standards to the facts presented." *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal quotation omitted).  Where a claimed error would not affect the outcome of a case, remand is not required. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005).  Finally, an ALJ's decision can only be reviewed by a court based on the evidence that was before the ALJ at the time he or she made his or her decision. *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

## IV. Discussion

Plaintiff asserts that the Acting Commissioner's determination should be remanded for the following reasons:  1) the ALJ erred in finding Plaintiff capable of performing his past relevant work; 2) the ALJ erred in relying on the an outdated State Agency medical opinion; and 3) remand is required for consideration of the evidence associated with the Agency's subsequent award of benefits on April 2, 2017.  (Doc. 9 at 2; Doc. 11 at 4.)  Because Plaintiff's second claimed error relates to the ALJ's RFC assessment which precedes the step four determination, the Court will first review the ALJ's consideration of medical opinion evidence.

## A.    *Medical Opinion Evidence*

Plaintiff asserts the ALJ erred by relying on the opinion of Dr. Bonita in formulating Plaintiff's RFC.  (Doc. 9 at 6.) Defendant responds that substantial evidence supports the evaluation of the medical opinions.  (Doc. 10 at 12.)  The Court concludes Plaintiff has shown that remand is required for further consideration of this issue.

Social Security Ruling 96-6p clarifies Agency policy regarding the consideration of findings of fact by State agency medical consultants such as Dr. Bonita.  The ruling provides that the findings of fact made by such a professional must be treated as expert opinion evidence of a non-examining source.  SSR 96-6p, 1996 WL 371180, at *1.  The ruling states that

> [i]n appropriate circumstances, opinions from state agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.  For example, the opinion of a State agency medical or psychological consultant or other program physician or psychologist may be entitled to greater weight than a treating source's medical opinion if the State agency medical or psychological consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source.

*Id.* at *3.[2]

Here, the State agency opinion was rendered on August 27, 2013 (R. 95), and record medical evidence entries are dated at least through November 2014 (*see*, *e.g.*, R. 452-55). Thus, Dr. Bonita's review was not based on a review of all relevant evidence. While the "complete case record" situation cited in SSR 96-6p is merely exemplary, this ruling and broad relevant authority indicate that the propriety of an ALJ's reliance on a non-examining source opinion is assessed in the context of whether the record contains opinion evidence entitled to greater deference.

Where an ALJ is not faced with rejecting a treating or examining source opinion, the Third Circuit Court of Appeals has held that an ALJ may rely on a non-examining, non-treating opinion that is uncontradicted by any other medical opinion in the record even where the opinion is not based on a review of all the evidence. *See*, *e.g.*, *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).

However, because the regulations and caselaw provide that controlling weight is generally due a well-supported treating physician's opinion and greater deference is due an examining

---

[2] ALJs are bound by the definitions in the Social Security Rulings in that rulings are "binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1). As stated in *Barnhart v. Walton*, 535 U.S. 212, 217 (2002), these rulings are entitled to deference by a reviewing court because courts are to "grant an Agency's interpretation of its own regulations considerable legal leeway."

source than a non-examining source, *see*, *e.g.*, 20 C.F.R. §
404.1527(c), in a case where the record contains some evidence
entitled to greater deference than a non-examining source, reliance
on a non-examining source requires careful analysis and review.

In this case, the record contains the November 21, 2014,
opinion of treating physician Deborah Smith, M.D. (R. 307-10.)
She is a primary care provider who treated Plaintiff at least from
June 2011 through November 2014. (*See* R. 251, 452.) Thus, as
recognized by ALJ Zack (R. 28), Dr. Smith's opinion would
ordinarily be entitled to greater deference than that of the non-
examining State agency physician.

Under applicable regulations and the law of the Third Circuit,
a treating medical source's opinions are generally entitled to
controlling weight, or at least substantial weight. *See*, *e.g.*,
*Fargnoli v. Halter*, 247 F.3d 34, 43 (3d Cir. 2001) (citing 20
C.F.R. § 404.1527(c)(2); *Cotter v. Harris*, 642 F.2d 700, 704 (3d
Cir. 1981)). Sometimes called the "treating physician rule," the
principle is codified at 20 C.F.R. 404.1527(c)(2), and is widely
accepted in the Third Circuit. *Mason v. Shalala*, 994 F.2d 1058 (3d
Cir. 1993); *see also Dorf v. Brown*, 794 F.2d 896 (3d Cir. 1986).
The regulation addresses the weight to be given a treating source's
opinion: "If we find that a treating source's opinion on the
issue(s) of the nature and severity of your impairment(s) is well-
supported by medically acceptable clinical and laboratory

15

diagnostic techniques and is not inconsistent with the other

substantial evidence in your case, we will give it controlling

weight." 20 C.F.R. § 404.1527(c)(2).[3] "A cardinal principle

guiding disability eligibility determinations is that the ALJ

accord treating physicians' reports great weight, especially when

their opinions reflect expert judgment based on continuing

observation of the patient's condition over a prolonged period of

time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)

---

[3] 20 C.F.R. § 404.1527(c)(2) states in relevant part:

> Generally, we give more weight to opinions from
> your treating sources, since these sources are
> likely to be the medical professionals most
> able to provide a detailed, longitudinal
> picture of your medical impairment(s) and may
> bring a unique perspective to the medical
> evidence that cannot be obtained from the
> objective medical findings alone or from
> reports of individual examinations, such as
> consultative examinations or brief
> hospitalizations. If we find that a treating
> source's opinion on the issue(s) of the nature
> and severity of your impairment(s) is well-
> supported by medically acceptable clinical and
> laboratory diagnostic techniques and is not
> inconsistent with the other substantial
> evidence in your case record, we will give it
> controlling weight. When we do not give the
> treating source's opinion controlling weight,
> we apply the factors listed in paragraphs
> (c)(2)(i) and (c)(2)(ii) of this section, as
> well as the factors in paragraphs (c)(3)
> through (c)(6) of this section in determining
> the weight to give the opinion. We will always
> give good reasons in our notice of
> determination or decision for the weight we
> give your treating source's opinion.

(citations omitted); *see also Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 355 (3d Cir. 2008).  In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion."  *Morales*, 225 F.3d at 317 (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988)).

Pursuant to 20 C.F.R. § 404.1527(c)(2), an ALJ must assign controlling weight to a well-supported treating medical source opinion unless the ALJ identifies substantial inconsistent evidence.  SSR 96-2p explains terms used in 20 C.F.R. § 404.1527 regarding when treating source opinions are entitled to controlling weight.  1996 WL 374188, at *1.  For an opinion to be "well-supported by medically acceptable clinical and laboratory diagnostic techniques," 28 U.S.C. § 404.1527(c)(2), "it is not necessary that the opinion be fully supported by such evidence"--it is a fact-sensitive case-by-case determination.  SSR 96-2p, at *2.  It is a determination the adjudicator must make "and requires an understanding of the clinical signs and laboratory findings in the case record and what they signify."  *Id.*  Similarly, whether a medical opinion "is not inconsistent with the other substantial evidence in your case record," 28 U.S.C. § 404.1527(c)(2), is a

judgment made by the adjudicator in each case.  SSR 96-2p, at*3.

The ruling explains that

> [s]ometimes, there will be an obvious
> inconsistency between the opinion and the
> other substantial evidence; for example, when
> a treating source's report contains an
> opinion that the individual is significantly
> limited in the ability to do work-related
> activities, but the opinion is inconsistent
> with the statements of the individual's
> spouse about the individual's activities, or
> when two medical sources provide inconsistent
> medical opinions about the same issue.  At
> other times, the inconsistency will be less
> obvious and require knowledge about, or
> insight into, what the evidence means.  In
> this regard, it is especially important to
> have an understanding of the clinical signs
> and laboratory findings and any treatment
> provided to determine whether there is an
> inconsistency between this evidence and
> medical opinions about such issues as
> diagnosis, prognosis . . . , or functional
> effects.  Because the evidence is in medical,
> not lay, terms and information about these
> issues may be implied rather than stated,
> such inconsistency may not be evidence
> without an understanding of what the clinical
> signs and laboratory findings signify.

SSR 96-2P, 1996 WL 374188, at *2.  The ruling further provides that
additional development may be needed to determine the appropriate
weight assigned a treating source opinion, "for example, to obtain
more evidence or to clarify reported clinical signs or laboratory
findings."  *Id.* at *4.  In contrast to those cases where the record
is adequately developed, SSR 96-2p specifically states that the ALJ
or Appeals Council "may need to consult a medical expert to gain
more insight into what the clinical signs and laboratory findings
signify in order to decide whether a medical opinion is well-

18

supported or whether it is not consistent with the other substantial evidence in the case record." *Id.*

The ruling reinforces the need for careful review an ALJ's decision to discount a treating source opinion, with particular attention paid to the nature of the evidence cited as contradictory. Consistent with SSR 96-2p's explanation of regulatory terms, Third Circuit caselaw indicates that "lay reinterpretation of medical evidence does not constitute 'inconsistent . . . substantial evidence.'" *Carver v. Colvin*, Civ. A. No. 1:15-CV-00634, 2016 WL 6601665, at *16 (M.D. Pa. Sept. 14, 2016)[4] (citing *Gober v. Matthews*, 574 F.2d 772, 777 (3d Cir. 1978); *Frankenfeld v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988); *Doak v. Heckler*, 790 F.2d 26, 29-30 (3d Cir. 1986); *Ferguson v. Schweiker*, 765 F.2d 31, 36-37 (3d Cir. 1985); *Kent v. Schweiker*, 710 F.2d 110, 115 (3d Cir. 1983); *Van Horn v. Schweiker*, 717 F.2d 871, 874 (3d Cir. 1983); *Kelly v. Railroad Retirement Bd.*, 625 F.2d 486, 494 (3d Cir. 1980); *Rossi v. Califano*, 602 F.2d 55, 58-59 (3d Cir. 1979); *Fowler v. Califano*, 596 F.2d 600, 603 (3d Cir. 1979)). Thus, the reviewing court should disregard medical evidence cited as contradictory if it is really lay interpretation or judgment rather than that of a qualified medical professional. *See*, *e.g.*, *Carver*,

---

[4] Magistrate Judge Gerald B. Cohn's Report and Recommendation was adopted by United States District Judge Sylvia H. Rambo on November 7, 2016. *Carver v. Colvin*, Civ. A. No. 1:15-CV-0634, 2016 WL 6582060 (M.D. Pa. Nov. 7, 2016).

6601665, at *11.

An ALJ's reliance on a non-examining physician's opinion which was not based on a review of all relevant evidence over that of a treating physician has been an issue raised in many appeals of the denial of benefits in this Court. *Kopinetz v. Colvin*, Civ. A. No. 3:16-CV-01074, 2017 WL 714072 (M.D. Pa. 2017); *Compton v. Colvin*, 218 F. Supp. 3d 316 (M.D. Pa. 2016); *Carver*, 2016 WL 6601665; *Wright v. Colvin*, Civ. A. No. 1:14-CV-02350, 2016 WL 446876 (M.D. Pa. Jan. 14, 2016)[5]; *Staudt v. Colvin*, Civ. A. No. 1:13-CV-2904, 2015 WL 1605574 (M.D. Pa. Apr. 9, 2015). Consistently, these and many other cases have concluded it is error for an ALJ to assign less than controlling weight to an opinion rendered by a treating physician based only on one opinion from a non-treating, non-examining source who did not review a complete case record. *Kopinetz*, 2017 WL 714072, at *7-8; *Compton*, 218 F. Supp. 3d at 331-32; *Carver*, 2016 WL 6601665, at *18; *Wright*, 2016 WL 446876, at *20; *Staudt*, 2015 WL 1605574, at *10-11 (M.D. Pa. Apr. 9, 2015). As noted in *Carver*, "[i]f a non-treating, non-examining source is unable to review the complete case record, the ALJ will be required to reinterpret the remainder of the record in order to reject a treating source opinion," which runs afoul of the long-standing

---

[5] Magistrate Judge Gerald B. Cohn's Report and Recommendation was adopted by United States District Judge Sylvia H. Rambo on February 4, 2016. *Wright v. Colvin*, Civ. A. No. 1:14-CV-2354, 2016 WL 452142 (M.D. Pa. Feb. 4, 2016).

prohibition against lay interpretation of medical evidence. 2016
WL 6601655, at *15-18 (listing cases).

A review of relevant Third Circuit caselaw shows the solid
underpinnings of these decisions.

> The Third Circuit has held that a
> medical opinion from a non-treating, non-
> examining source who did not review a
> complete record was "not substantial."
> *Morales v. Apfel*, 225 F.3d 310 (3d Cir.
> 2000). In *Brownawell v. Comm'r of Soc. Sec.*,
> 554 F.3d 352 (3d Cir. 2008), the only other
> precedential decision addressing an ALJ who
> relied on a non-treating, non-examining
> source who did not review a complete record
> to reject a treating source opinion, the
> Third Circuit also remanded. *See Brownawell*,
> 554 F.3d at 352. In contrast, in *Brown v.
> Astrue*, 649 F.3d 193 (3d Cir. 2011), the
> Third Circuit affirmed where there were two
> non-treating opinions, one from a source who
> reviewed the entire record. *Id.* . . .

> In *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d
> 500 (3d Cir. 2009), there were three non-
> treating medical opinions and one treating
> medical opinion, but the Court held that the
> non-treating medical opinions did not provide
> good enough reason to reject the treating
> source medical opinion because they were
> "perfunctory" and omitted significant
> objective findings. *Id.* at 505.

*Carver*, 2016 WL 6601665, at *12. In addition to an extensive
review of relevant caselaw in this Circuit and other Courts of
Appeal, *Carver* also analyzes relevant regulatory provisions,
including 20 C.F.R. § 404.1527(c)(2), and SSRs 96-6p, 96-5p, and
96-2p. 2016 WL 6601665, at *12-17. The following summary
succinctly sets out a useful rule and a persuasive rationale for
its consistent application.

Read together, 20 C.F.R. § 404.1527(c)(2), SSR 96-6p, SSR 96-5p, SSR 96-2p, *Diaz*, *Morales*, *Brownawell*, *Brown*, and the prohibition on lay interpretation of medical evidence indicate that, generally, the ALJ will lack substantial evidence to assign less than controlling weight to a treating source opinion with only a lay reinterpretation of medical evidence or an opinion from a non-treating, non-examining source who did not review a complete record. *See* 20 C.F.R. § 404.1527(c)(2); SSR 96-6p; SSR 96-5p; SSR 96-2p; *Brown*, 649 F.3d at 196; *Diaz*, 577 F.3d at 505; *Brownawell*, 554 F.3d at 352; *Morales*, 225 F.3d at 317; *Gober*, 574, F.2d at 777); *Frankenfeld*, 861 F.2d at 408; *Doak*, 790 F.2d at 29-30; *Ferguson*, 765 F.2d at 36-37; *Kent*, 710 F.2d at 115; *Van Horn*, 717 F.2d at 874; *Kelly*, 625 F.2d at 494; *Rossi*, 602 F.2d at 58-59; *Fowler*, 596 F.2d at 603. Harmonizing the Regulations, case law, SSRs, and other sources of authority into a consistent statement of the law regarding the treating physician rule reflects "the need for efficient administration of an obligatory nationwide benefits program" given "more than 2.5 million claims for disability benefits [filed] each year" because the treating physician rule works to foster uniformity and regularity in Social Security benefits determinations made in the first instance by a corps of administrative law judges." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833, 123 S. Ct. 1965, 1971, 155 L.Ed. 2d 1034 (2003) (internal citations omitted). The "massive unexplained differences in the rate at which ALJs grant or deny benefits" heightens the need for the Courts to articulate clear rules. Harold J. Krent & Scott Morris, Inconsistency and Angst in District Court Resolution of Social Security Disability Appeals at 5 (Chi. -Kent Coll. of Law, Research Paper No. 2014-30, 2014), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2530158.

*Carver*, 2016 WL 6601665, at *18.

22

Here, ALJ Zack did not assign any particular weight to Dr.
Smith's opinion that Plaintiff was limited to less than sedentary
work.  (*See* R. 27-28.)  He rendered the following assessment of the
opinion:

> The opinion evidence consists of a
> "check the box" form filled out by Dr. Smith,
> the claimant's primary care physician
> (Exhibit 5F).  Dr. Smith limits the claimant
> to less than sedentary exertion.  The Medical
> Consultant for the Disability Determination
> Service gave a residual functional capacity
> opinion for light exertion.  Normally the
> primary care physician would trump the non-
> examining Disability Determination Service
> Doctor, however, Dr. Smith states she
> completed the disability form with the
> claimant's help.  This raises the possibility
> of over reliance on what the claimant said he
> could and could not do (Exhibit 12F/3).

(R. 27-28.)

Pursuant to the relevant authority reviewed above, ALJ Zack
did not provide adequate reasons for not assigning Dr. Smith's
opinion controlling weight: he did not articulate a finding that
the opinion was not "well-supported by medically accepted clinical
and laboratory diagnostic techniques" and he did not articulate a
finding that the opinion was  "inconsistent with the other
substantial evidence in your case record."   20 C.F.R. §
404.1527(c)(2).  ALJ Zack noted that Dr. Smith's opinion was not
consistent with Dr. Bonita's opinion that Plaintiff had the RFC for
light exertion.  (R. 28.)  However, because Dr. Bonita's opinion
was not based on a review of the entire case record, pursuant to
the rule articulated above, his opinion alone cannot be considered

23

substantial evidence for the purpose of determining whether there is sufficient contradictory evidence to assign less than controlling weight to Dr. Smith's opinion.  Because ALJ Zack points to no other contradictory evidence, the Court cannot conclude that he had a sufficient basis to reject the treating source opinion which, in turn, leads to the conclusion that his RFC is not supported by substantial evidence.[6]  Therefore, remand is required

---

[6] Defendant's arguments to the contrary (Doc. 10 at 13-15) are not persuasive.  First, the mere fact that Plaintiff helped Dr. Smith complete the form report may "raise the possibility" of over-reliance on subjective complaints as noted by ALJ Zack, but without more analysis and explanation, a mere possibility of over-reliance—the only concrete criticism of the opinion—is an insufficient basis to undermine a treating source opinion. Furthermore, appropriate answers to some questions contained in most form reports require input from the patient.  Second, Defendant's statement that Dr. Bonita's opinion merited "significant consideration" pursuant to *Chandler* (Doc. 10 at 14) is undermined by the analysis set out in the text, particularly given that the record before the ALJ in *Chandler* did not include a treating physician's opinion.  *See* 667 F.3d at 360-63.  Nor does Defendant's citation to *Jones v. Sullivan*, 954 F.3d 125, 129 (3d Cir. 1991), provide support for ALJ's reliance on Dr. Bonita's opinion.  (*See* Doc. 10 at 14.)  As noted in *Carver*, "*Jones* was decided before the SSA promulgated the controlling weight provision, and involved multiple consistent non-treating opinions that supported the ALJ's determination."  2016 WL 6601665, at *12 (citing *Jones*, 954 F.2d at 129)).  Third, whether "diagnostic testing and objective findings were consistent with Dr. Bonita's opinion" (Doc. 10 at 14), is not the relevant inquiry—the question is whether his opinion, based on an incomplete record, can be considered substantial inconsistent evidence sufficient to undermine Dr. Smith's opinion.  Based on the ALJ's cursory analysis of Dr. Smith's opinion and the rule adopted in the text, the Court concluded Dr. Bonita's opinion did not provide substantial evidence supporting the ALJ's RFC assessment.  Fourth, Defendant's assertion that "there was conflicting medical evidence in the record" may be accurate as may be the assertion that the ALJ is entitled to choose between conflicting medical testimony or conclusions.  (Doc. 10 at 15 (citing *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)).)  However, as discussed in the text, the ALJ's choice cannot be based

for further consideration of this issue.

**B.   *Step Four Determination***

Although the Court has determined that remand is required on the basis that the ALJ's opinion assessment and evidence relied upon are insufficient to reject the treating source opinion, the Court will address Plaintiff's step four claimed error in that the requisite analysis relates in part to Plaintiff's RFC and points to matters potentially requiring additional consideration upon remand.

With this claimed error, Plaintiff asserts the ALJ's step four finding that he could perform his past relevant work as actually and generally performed is erroneous for several reasons. (Doc. 10 at 6.)  Defendant responds that Plaintiff did not demonstrate that he could not perform his past relevant work as actually or generally performed.  (Doc. 10 at 4.)  The Court concludes Plaintiff has shown that he could not perform the job as actually performed but he has not shown that he could not perform the job as generally performed.

**1.   <u>Past Relevant Work as Actually Performed</u>**

Plaintiff first contends that the work as actually performed

on impermissible lay interpretation of medical evidence or sole reliance on a non-examining opinion based on incomplete record review.  Finally, Defendant's notation that *Chandler* observed that "because state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision" (Doc. 10 at 16 (citing *Chandler*, 667 F.3d at 361)), is a fact statement that does not conflict with the limitation of such an opinion consistent with relevant authority as discussed in the text.

was not consistent with light work because he performed it at the medium exertional level as indicated by his testimony that he lifted up to fifty pounds in his managerial position and was constantly standing and/or walking during the work day. (Doc. 9 at 4.) Defendant responds that Plaintiff's work history report contained information that the heaviest weight he lifted in the job was twenty pounds and, thus, differed from his testimony, and his attempt to differentiate the standing/walking requirements of medium and light work is erroneous because both require standing or walking, off and on, for a total of approximately six hours of an eight-hour day. (Doc. 10 at 6 (citing SSR 83-10, 1983 WL 31251, at *6).) Defendant also asserts that Plaintiff's counsel never challenged/questioned the VE's description of Plaintiff's past work as a light job. (*Id.* at 7.)

Defendant's argument regarding standing/walking does not acknowledge Plaintiff's consistent assertion that he was standing/walking all day in his managerial position. (R. 47, 156.) As Plaintiff notes, this takes the walking/standing demands of Plaintiff's job as performed out of the light category. (Doc. 11 at 2 (citing SSR 83-10, 1983 WL 31251, at *5).)

Nor does Defendant address the fact that the ALJ did not discount or qualify Plaintiff's testimony about walking/standing and weight lifted with his first hypothetical to which the VE responded that Plaintiff could perform the position as actually and generally performed. As well as the standing/walking demands noted

26

above, Plaintiff described the work as actually performed to include lifting up to fifty pounds (R. 45)--weight well beyond the maximum for light work. *See* 20 C.F.R. § 404.1567.

On this record, the ALJ's determination that Plaintiff could perform the manager job as actually performed is not supported by substantial evidence. However, this conclusion does not give rise to harmful error unless Plaintiff also shows that the ALJ erred in his determination that Plaintiff could do the job as generally performed. *See* 20 C.F.R. § 404.1560(b)(2) (determining whether claimant can do past relevant work considers whether claimant can do work as actually performed *or* as generally performed); *see also* SSR 82-61, 1982 WL 31387, at *2.

## 2. <u>Past Relevant Work as Generally Performed</u>

Plaintiff also asserts that the ALJ erred as a matter of law in finding that he could do the manager job as generally performed. (Doc. 9 at 5.) This argument is based on the proposition that the manager position was a "composite job" and, pursuant to Program Operations Manual System (POMS) DI 25005.020(B), 2011 WL 4753471, an ALJ cannot make an adverse step four finding that the claimant remains capable of performing a composite job as generally performed. (Doc. 9 at 5.) Plaintiff contends that his job was a composite job because it involved "significant elements that are not included in the DOT's description of the Manager job. DOT #185.137-010. . . . [I]n addition to his managerial duties, [he] also delivered pizzas, unloaded delivery trucks, and answered the

telephone." (Tr. 45-46).

Defendant responds that "the inability to do past relevant work as exactly performed does not mean that the job is a composite job." (Doc. 10 at 9.) Defendant concludes that, pursuant to SSR 82-61, and the circumstances of this case, Plaintiff did not satisfy his step four burden of showing that his manager's position involved "significant elements" of any other job, and, therefore, he did not show that the ALJ erred in finding that Plaintiff could do his past relevant work as a manager as generally performed. (Doc. 10 at 9-11.)

First, the Court notes that this Circuit has consistently concluded that POMS do not have the force of law. *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 859 (3d Cir. 2007) (not precedential) (listing cases); *Edelman v. Comm'r of Soc. Sec.*, 83 F.3d 68, 71 n.2 (3d Cir. 1996). Because POMS provisions are not judicially enforceable, a claimed violation of a POMS' provision does not require remand as a matter of law. *See*, *e.g.*, *Franklin v. Berryhill*, 3:16-CV-2284 (M.D. Pa. filed May 15, 2017) (listing cases). Thus, Plaintiff's assertion that the ALJ erred as a matter of law by failing to comply with a POMS directive (Doc. 9 at 5) would not be cause for remand.[7]

---

[7] Furthermore, Plaintiff merely asserts in a conclusory fashion that his job as actually performed involved "*significant* elements" that are not included in the DOT description. (Doc. 9 at 5 (emphasis added).) He does not show that these were "*main* duties" of his past relevant work which suggested that he performed a composite job pursuant to the cited POMS. (*See id.* (emphasis

Second, Plaintiff did not show that the ALJ erred by finding that he was able to do the manager position as generally performed. SSR 82-61 sets out "[t]hree possible tests for determining whether or not a claimant retains the capacity to perform his or her past relevant work." 1982 WL 31387, at *1. The third test addresses [w]hether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy." *Id.* at 2. The provision notes parenthetically that the DOT descriptions "can be relied upon--for jobs that are listed in the DOT--to define the job as it is *usually* performed in the national economy." *Id.* SSR 82-61 further explains that

> it is understood that some individual jobs may require somewhat more or less exertion that the DOT description.
>
> A former job performed by the claimant may have involved functional demands and job duties significantly in excess of those generally required by other employers throughout the national economy. Under this test, if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be "not disabled."

added).) Similarly, Plaintiff makes no showing that this is a case falling under the "Further Information" section at the end of SSR 83-61 regarding cases involving "significant variations between a claimant's description and the description shown in the DOT" which notes that "composite jobs have significant elements of two or more occupations and, as such, have not counterpart in the DOT." 1982 WL 31387, at *2.

*Id.* at \*2.

Here, Plaintiff points to functions in excess of the DOT managerial description--delivering pizzas, unloading delivery trucks, and answering the telephone (Doc. 9 at 5)--and his testimony indicates that he could not perform the delivery and unloading functional demands/job duties (*see*, *e.g.*, R.45-46). Plaintiff does not argue he cannot perform the job as ordinarily performed, i.e., the position as described in the DOT. Plaintiff has not shown that he had a "composite job" which operated as a matter of law against an adverse finding at step four and he has not argued that his RFC would not allow him to perform a manager job as generally performed. Therefore, the current record does not show the ALJ erred in finding that Plaintiff could perform the manager job as generally performed and the error in the determination that Plaintiff could do the job as actually performed would be deemed harmless.

**C.    *Sentence Six Remand***

Finally, Plaintiff contends that remand is warranted under the sixth sentence of 42 U.S.C. § 405(g) for consideration of the Agency's subsequent award of benefits. (Doc. 11 at 4.) Defendant responds that a subsequent award of benefits alone does not warrant remand. (Doc. 15 at 1-2.) The Court concludes that the weight of authority supports a conclusion that a subsequent decision is not new evidence for purposes of a sentence six remand.

To obtain a sentence six remand, the plaintiff has the burden

30

of proving that evidence not submitted to the ALJ is new and material, and he had good cause for not presenting the evidence to the ALJ. 42 U.S.C. § 405(g) (sentence six); *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001). A panel of the Third Circuit Court of Appeals considered this issue in *Cunningham v. Comm'r of Soc. Sec.*, 507 F. App'x 111 (3d Cir. 2012) (not precedential):

> [The plaintiff] requests that we consider the fact that she has been awarded disability benefits as of August 30, 2008-- the day after benefits were denied in the matter presently before us. But the fact that another ALJ found [the plaintiff] to be disabled does not, in itself, warrant remand or reversal. *See Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652-53 (6th Cir. 2009). Remand or reversal based on the subsequent favorable decision would be appropriate only if that decision was based on new and material evidence that [the plaintiff] had good cause for not raising in the prior proceeding. *Id.* at 653. [The plaintiff] has not presented any such evidence.

*Cunningham*, 507 F. App'x at 120.

The Court recognizes that the Third Circuit "steadfastly attempt[s] to discourages District Courts from relying on nonprecedential opinions." *Jamison v. Klem*, 544 F.3d 266, 279 n.11 (3d Cir. 2008). However, Plaintiff cites no contrary authority and does not point to any new and material evidence upon which the subsequent decision was based. (*See* Doc. 11.) Although the Ninth Circuit Court of Appeals decided that a later favorable decision could be new and material evidence in *Luna v. Astrue*, 623 F.3d 1032 (9th Cir. 2010), Plaintiff does discuss the case or address the

circuit split as evidenced by *Luna* and the Sixth Circuit's *Allen* decision cited in *Cunningham*. The Eleventh Circuit Court of Appeals set out a well-reasoned basis for agreeing with the Sixth Circuit's *Allen* decision in *Hunter v. Soc. Sec. Admin. Comm'r*, 808 F.3d 818 (11th Cir. 2015), stating that "[a] decision is not evidence any more than evidence is a decision." *Id.* at 822. As a general matter, given the deferential review standard, there would be no inherent inconsistency

> in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate. Because of that possibility, the mere existence of a later favorable decision by one ALJ does not undermine the validity of another ALJ's earlier unfavorable decision or the factfindings upon which it was premised.

*Id.* (citing *Allen*, 561 F.3d at 653).

Based on this reasoning, the mere existence of a later favorable decision would not be cause for remand. However, the soundness of the *Hunter* analysis does not conflict with a directive that extra scrutiny of the record upon remand is warranted in a case where remand is required because the reviewing court determines that the earlier decision is not based on substantial evidence. This is particularly important in the case decided here given the remedial nature of the statute and the potential that,

absent a finding of an earlier onset date on remand, Plaintiff would not be able to receive benefits for a period of disability based on the operation of the relevant statute and administrative delay in considering the appeal of the ALJ's earlier decision.[8] Thus, although remand is not required pursuant to sentence six of § 405(g), the circumstances of this case indicate that a careful review of the evidence must be undertaken and, if Plaintiff is not found disabled as of an earlier date, some acknowledgment and explanation should be provided as to why he was found not disabled

---

[8] Plaintiff explains his situation as follows:

> With respect to the later award, it must also be understood that Mr. Blum was prohibited from filing a new application for benefits until after the Appeals Council denied review of the prior ALJ decision in October 2016 (Tr. 1-7). *See* SSR 11-1p, 2011 WL 3962767 *2. Thus, although found disabled as of March 18, 2015, Mr. Blum was only awarded benefits for the period beginning in October 2015, because the Agency "can pay benefits no earlier than twelve months before the month of filing" (Exhibit A). *See* 42 U.S.C. § 423(b). Accordingly, unless the Court reverses or remands the ALJ's prior decision, Mr. Blum can never be paid for the entire period of established disability. Thus, remand under sentence 6 of 42 U.S.C. § 405(g) is warranted, in addition to a sentence 4 remand.

(Doc. 11 at 5.) Defendant does not address this averment (*see* Doc. 15), and there is no indication that Plaintiff's request for review was not timely filed on May 21, 2015, or that the time from the request for review to the Appeals Council's October 13, 2016, decision was in any way attributable to delay caused by Plaintiff.

on March 17, 2015, and was later found disabled as of the next day, March 18, 2015.  (*See* R. 29; Doc. 11-1 at 1.)

### V. Conclusion

For the reasons discussed above, the Court concludes that Plaintiff's appeal is properly granted.  This matter is remanded to the Acting Commissioner for further consideration consistent with this opinion.  An appropriate Order is filed simultaneously with this Memorandum.

S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge

DATED: June 7, 2017